FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
7/2/2025
JEFFREY P. COLWELL, CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03443-CNS-SBP

DAVID VOGL

     Plaintiff(s),

v.

WELD COUNTY BOARD OF COUNTY COMMISSIONERS;
WELD COUNTY SHERIFF'S OFFICE

     Defendant(s).

---

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

Plaintiff David Vogl, proceeding pro se, respectfully submits this Opposition to Defendants' Motion to Dismiss [Doc. No. 31]. Plaintiff's Complaint [Doc. No. 10] clearly and plausibly alleges violations of federal and state law, including discrimination and retaliation under Title VII and the Colorado Anti-Discrimination Act ("CADA"), procedural due process and equal protection violations pursuant to 42 U.S.C. § 1983, and breach of implied employment contract claims under Colorado law. Defendants' motion misapplies relevant legal standards, improperly invokes governmental immunity, and seeks dismissal based on procedural technicalities rather than substantive grounds. As demonstrated herein, Plaintiff has alleged sufficient facts to support all claims, and Defendants' motion should therefore be denied in its entirety. In support of this motion, Plaintiff states as follows:

## I.    <u>INTRODUCTION</u>

Plaintiff's claims arise from Defendants' discriminatory, retaliatory, and procedurally improper actions resulting in Plaintiff's constructive discharge. Plaintiff alleges selective enforcement of employment policies, denial of constitutionally required due process, and severe harassment based on national origin and gender. Defendants' Motion to Dismiss improperly seeks dismissal on technical grounds rather than substantive deficiencies. Plaintiff respectfully requests that the Court deny Defendants' Motion and allow the claims to proceed on their merits.

II.    <u>LEGAL STANDARDS GOVERNING DEFENDANTS' MOTION TO DISMISS</u>

A. Standard Under Rule 12(b)(1): Subject Matter Jurisdiction (CGIA Immunity)

Under Colorado Rule of Civil Procedure 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction may be raised where governmental immunity is asserted under the Colorado Governmental Immunity Act ("CGIA"). The plaintiff bears the burden of establishing jurisdiction, and courts may consider evidence outside the pleadings without converting the motion into summary judgment. See *City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076 (Colo. App. 2006). CGIA immunity, however, applies strictly to tort claims or claims sounding in tort and explicitly does not extend to claims arising under federal statutes, constitutional claims under §1983, state statutory anti-discrimination claims under the Colorado Anti-Discrimination Act ("CADA"), or breach of implied contract claims grounded upon employment policies. See *City of Colorado Springs v. Conners*, 993 P.2d 1167 (Colo. 2000); *Elder v. Williams, 2020 CO 88, ¶¶ 19–37* (Colo. 2020). Indeed, the Colorado Supreme Court expressly held in *Denver Health & Hosp. Auth. v. Houchin*, 2020 CO 89, ¶ 25 (Colo. 2020), that "claims against

governmental entities seeking compensatory and equitable relief under section 24-34-405 of CADA do not and could not lie in tort and therefore are not barred by the CGIA." Furthermore, under the Supremacy Clause of the U.S. Constitution (U.S. Const. art. VI, cl. 2), state-law immunity provisions, such as the CGIA, cannot supersede or negate claims based on federal statutes or the U.S. Constitution. Thus, Defendants' invocation of CGIA immunity does not provide a valid ground for dismissal of Plaintiff's federal statutory, constitutional, state statutory (CADA), or implied-contract-based claims.

**B. Standard Under Rule 12(b)(6): Facial Plausibility and Liberal Pleading Standards**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is plausible on its face, enabling a reasonable inference of defendant's liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This standard does not require detailed evidence or proof of probability at the pleading stage; only factual content sufficient for plausibility is required. See *Twombly*, 550 U.S. at 556; Fed. R. Civ. P. 8(a)(2).

Courts consistently emphasize caution in granting a motion to dismiss, noting that it is a harsh remedy that should be applied sparingly. Dismissal should only occur if the complaint clearly lacks plausible grounds for relief, as federal rules strongly favor resolution on the merits rather than technicalities. See *Dias v. City & Cnty. of Denver*, 567 F.3d 1169 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556). In evaluating Defendants' motion, this Court must accept Plaintiff's factual allegations as true, viewing them in Plaintiff's favor, and drawing all reasonable inferences accordingly. See *Ridge*

at *Red Hawk, LLC v. Schneider*, 493 F.3d 1174 (10th Cir. 2007); *Erickson v. Pardus*,

551 U.S. 89 (2007) (courts liberally construe pro se pleadings).

### C. Special Considerations for Pro Se Pleadings

The Court must apply an especially lenient standard to Plaintiff's Complaint

because he proceeds pro se. A pro se pleading must be "liberally construed" and held

to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v.*

*Gamble*, 429 U.S. 97 (1976); see also Fed. R. Civ. P. 8(e). Plaintiff's Complaint provides

clear notice of the factual and legal bases for each claim, reflecting the complexity of

Defendants' prolonged misconduct. Defendants' criticism that the Complaint is overly

detailed misapplies the liberal pleading standards and special solicitude required under

*Estelle*.

### D. Judicial Notice: EEOC Records and Public Documents Without Conversion to Summary Judgment

In considering a motion to dismiss, the Court may judicially notice matters of

public record, including EEOC filings, government-issued policies, and records explicitly

referenced in the Complaint and integral to Plaintiff's claims, without converting a Rule

12(b)(6) motion into one for summary judgment. Plaintiff respectfully requests that the

Court take judicial notice of Plaintiff's EEOC charge, Defendants' EEOC position

statements, Weld County employment policies, and internal investigatory documents, all

of which are attached to Plaintiff's Declaration [Doc. No. 39-1] and specifically

referenced in Plaintiff's Complaint and may be considered by this Court in evaluating

the sufficiency of Plaintiff's claims. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308 (2007); *Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010).

### E. Amendment as Alternative Relief Under Rule 15(a)(2)

To the extent this Court identifies any potential deficiencies in Plaintiff's

Complaint, dismissal would be inappropriate without first affording Plaintiff an

opportunity to amend. Rule 15(a)(2) directs that courts should grant leave to amend

pleadings "freely… when justice so requires." *Foman v. Davis*, 371 U.S. 178 (1962).

Especially given Plaintiff's pro se status, liberal leave to amend is highly favored unless

amendment would clearly be futile or prejudicial to Defendants. *See Hall v. Bellmon*,

935 F.2d 1106 (10th Cir. 1991). Plaintiff, proceeding pro se, has diligently attempted to

set forth his claims fully and comprehensively. Therefore, should the Court find any

aspect of the Complaint inadequate, Plaintiff respectfully requests leave to amend to

address any identified issues, ensuring the interests of justice are fully served.

### III.    TITLE VII AND CADA CLAIMS

Under the liberal Rule 12(b)(6) standard, Plaintiff's Complaint pleads "enough

facts to state a claim to relief that is plausible on its face" for each of his Title VII and

CADA causes of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). In evaluating

plausibility, this Court must accept Plaintiff's factual allegations as true and draw all

reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Plaintiff

alleges that he, a male of German descent and an honorably discharged veteran of the

German Armed Forces who served alongside U.S. military forces, was: (A) subjected to

severe and pervasive harassment (being repeatedly called "Nazi" and "sour kraut," told

Germans "were not allowed to have opinions," and physically assaulted during training);

(B) treated disparately due to his race/national origin and gender; (C) retaliated against

via a punitive Internal Affairs investigation immediately after reporting the harassment;

and (D) ultimately forced to resign (constructive discharge). These allegations easily
satisfy the plausibility threshold. Accepted as true, these facts establish discrimination
and retaliation "because of" Plaintiff's sex and national origin, entitling him to relief under
Title VII and the Colorado Anti-Discrimination Act (CADA). Because CADA claims are
interpreted consistently with Title VII claims in this context, the analysis below applies to
both statutes. Defendants' arguments to the contrary misapply the law, overlook key
factual allegations, and rely upon cases clearly distinguishable from Plaintiff's
circumstances. Plaintiff addresses each of Defendants' arguments in turn.

**A. Plaintiff Plausibly Alleges a Severe or Pervasive Hostile Work
Environment**

To state a hostile work environment claim under Title VII and CADA, Plaintiff
must allege harassment (1) based on a protected characteristic, and (2) sufficiently
severe or pervasive to alter employment conditions. *Morris v. City of Colo. Springs*, 666
F.3d 654 (10th Cir. 2012). Plaintiff explicitly alleges a workplace "permeated with
discriminatory intimidation, ridicule, and insult," targeting him due to his German
national origin. *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675 (10th Cir. 2007). As a
German military veteran who honorably served alongside U.S. forces, Plaintiff
repeatedly endured profoundly offensive harassment, including being labeled "Nazi,"
"sour kraut," and told Germans "were not allowed to have opinions because they lost
World War II." (Complaint, Doc. No. 10-1, p. 2.)

The epithet "Nazi" alone evokes the horrific atrocities of the Holocaust,
associating Plaintiff personally with crimes universally condemned in history. Courts
recognize such historically loaded slurs as extraordinarily severe, even if infrequent.

*EEOC v. PVNF, L.L.C.*, 487 F.3d 790 (10th Cir. 2007). Defendants' attempt to minimize this slur as a "minor slight" is legally unsupported and highlights precisely the discriminatory conduct prohibited by Title VII and CADA.

Plaintiff also alleges a physical assault by a colleague during workplace training. (Complaint, Doc. No. 10-1, p. 2.) Such conduct constitutes criminal assault and harassment under Colorado law. Colo. Rev. Stat. §§ 18-3-204, 18-9-111 (2023). Even a single physically threatening or humiliating act independently establishes a hostile environment. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998). Critically, this assault was boosted by Plaintiff's supervisor (Sgt. Channell), as revealed in EEOC documents selectively disclosed to Plaintiff in October 2023—documents Defendants concealed despite Plaintiff's diligent requests.

Plaintiff describes harassment that was frequent, ongoing, and explicitly targeted at his national origin, surpassing the severity and pervasiveness thresholds. *Lounds v. Lincare, Inc.*, 812 F.3d 1208 (10th Cir. 2015). Defendants erroneously rely on cases such as *Morris* and *Al-Kazaz*, involving isolated comments without physical violence or sustained discrimination. Plaintiff's allegations substantially exceed these cases in severity, frequency, and targeted harassment.

In sum, Plaintiff's allegations of historically severe slurs and physical assault—tolerated and implicitly encouraged by Defendants—clearly establish a hostile work environment under Title VII and CADA.

### B.  Disparate Treatment – Adverse Action Because of Protected Class

Plaintiff also states a plausible disparate treatment claim under Title VII and CADA. Apart from harassment, Plaintiff explicitly alleges that he experienced

discriminatory adverse employment actions based upon his protected status as a male

of German descent. Specifically, he alleges that after enduring weeks of harassment

based on national origin and gender, management failed to protect him and instead

targeted him with an unfounded Internal Affairs investigation—a severe disciplinary

measure not imposed upon similarly situated non-German or female employees.

(Complaint, Doc. No. 10-1, p. 2., p. 8.)

Under Title VII and CADA, Plaintiff ultimately must prove an adverse employment

action because of a protected trait. *Plotke v. White*, 405 F.3d 1092 (10th Cir. 2005).

However, at the pleading stage, Plaintiff need only allege facts giving rise to a plausible

inference of discriminatory intent. Id. Plaintiff has clearly done so. The Internal Affairs

investigation of over 110 days, including administrative leave for over 45 days without

sufficient reasons, described in the Complaint was a serious, materially adverse

employment action. The Tenth Circuit and Supreme Court unequivocally recognize that

tangible employment consequences—including constructive discharge, which Plaintiff

explicitly alleges here—are prototypical examples of materially adverse actions. See

*Green v. Brennan*, 578 U.S. 547 (2016); *Strickland v. UPS, Inc.*, 555 F.3d 1224 (10th

Cir. 2009).

Defendants mistakenly rely on *Piercy v. Maketa*, 480 F.3d 1192 (10th Cir. 2007),

arguing Plaintiff experienced only minor inconveniences insufficient to qualify as

adverse. However, *Piercy* explicitly recognized that "significant change in employment

status," including termination or constructive discharge, constitutes an adverse

employment action. Id. Unlike the minor inconveniences at issue in *Piercy*, where

plaintiffs complained of lateral job assignments with no meaningful employment harm,

Plaintiff here explicitly alleges a severe, significant employment change: constructive termination of his career. The direct and tangible harm alleged—forced resignation—plainly satisfies the "adverse action" requirement.

Moreover, Plaintiff explicitly alleges disparate treatment: while Plaintiff was aggressively targeted and constructively discharged, similarly situated employees outside his protected classes—non-German and female employees—were explicitly protected from such harsh disciplinary measures (Complaint, Doc. No. 10-1, p. 8.). For instance, the Complaint specifically identifies Deputy Hein/Wilson, who engaged in misconduct but faced no adverse action due to her differing protected characteristics, whereas Plaintiff was aggressively investigated and forced to resign. (Complaint, Doc. No. 10-1, p. 2.) At this pleading stage, Plaintiff has alleged disparate treatment sufficient to support a plausible inference of discrimination. *Plotke*, 405 F.3d 1092.

Finally, Defendants' argument that Plaintiff's resignation was merely voluntary and thus non-actionable fails entirely, for the reasons detailed in Plaintiff's constructive discharge analysis. See infra Section III.D. Plaintiff alleges circumstances clearly meeting the constructive discharge standard under controlling precedent: conditions so intolerable due to discrimination and retaliation that resignation was effectively compelled. *Green*, 578 U.S. 547.

Thus, Plaintiff has clearly alleged facts supporting that he was subjected to materially adverse employment actions—targeted discipline culminating in constructive discharge—because of protected traits (national origin, gender). Defendants' attempts to minimize these allegations lack merit, and their cited authorities actually support Plaintiff's position.

**C.  Plaintiff Has Adequately Pleaded a Retaliation Claim**

Plaintiff sufficiently alleges a plausible retaliation claim under Title VII and CADA. To state a claim for retaliation, a plaintiff must plausibly allege that (1) he engaged in protected activity, (2) he suffered a materially adverse action, and (3) a causal connection exists between the protected activity and adverse action. *See Hansen v. SkyWest Airlines*, 844 F.3d 914 (10th Cir. 2016).

Plaintiff explicitly alleges protected activity under both federal law and Weld County policy. At the end of November 2021, Plaintiff reported violations constituting discrimination and harassment prohibited under Title VII and the Colorado Anti-Discrimination Act (CADA), including severe national-origin-based and sex-based harassment—explicit slurs such as "Nazi" and "sour kraut"—as well as workplace physical assault and additional misconduct involving Deputy Hein. Plaintiff's reports were also mandated under Weld County Sheriff's Office (WCSO) Standards of Conduct Policy 1212.6(p), requiring deputies to promptly report employee misconduct. (Complaint, Doc. No. 10-1, p. 2.)

Instead of properly addressing Plaintiff's federally and county-protected complaints, Defendants promptly initiated a retaliatory Internal Affairs (IA) investigation against Plaintiff on December 18, 2021—approximately three weeks later his complaints. Captain Caldwell authored an IA report falsely portraying Plaintiff as a harasser, explicitly using Plaintiff's own mandated reporting actions—performed directly in front of his supervisor and prior to initiating the IA—as the central basis for finding Plaintiff guilty of misconduct and recommending his termination. This explicit supervisory awareness, combined with the close temporal proximity between Plaintiff's

protected reporting and the subsequent adverse IA findings, strongly supports a causal

connection under established precedent.

The retaliatory IA investigation lasted over 110 days, significantly exacerbating

Plaintiff's distress and uncertainty. Defendants conducted only one formal interview in

mid-December 2021 and then isolated Plaintiff without any meaningful communication

for nearly four months, until his termination on April 08, 2022. This unjustifiably

prolonged investigation created intolerable working conditions, directly resulting in

formal disciplinary action confirmed by both the Defendants' EEOC position statement

and Defendants' own draft termination letter. Ultimately, this disciplinary action

culminated in Plaintiff's termination. Defendants' argument that the IA investigation was

not materially adverse fundamentally misconstrues controlling law, as courts

consistently recognize that retaliatory investigations, particularly those leading directly to

discipline and termination, constitute materially adverse actions under Title VII and

CADA.

The U.S. Supreme Court has explicitly held that Title VII's anti-retaliation

provision "covers any employer action that well might dissuade a reasonable worker

from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.

v. White*, 548 U.S. 53 (2006). This standard is intentionally broad and does not require

tangible employment actions such as firing or demotion. Id. Rather, an action is

materially adverse if it could reasonably deter employees from engaging in protected

activity. Id.; see also *Somoza v. Univ. of Denver*, 513 F.3d 1206 (10th Cir. 2008).

Here, Plaintiff specifically alleges that immediately following his complaints,

Defendants subjected him to an intrusive IA investigation. In a law enforcement context,

an IA investigation inherently carries significant stigma, potential for discipline,

professional damage, and career consequences. A reasonable employee—particularly

one in Plaintiff's position, an honorably discharged veteran of the German Armed

Forces who served alongside U.S. military personnel—would undoubtedly be deterred

from reporting discrimination knowing that such reporting would result in scrutiny,

possible discipline, or career harm. This is precisely the "chilling effect" against which

Title VII protects. See *White*, 548 U.S. 53.

Defendants cite cases suggesting workplace investigations may not always

constitute adverse actions, such as *Piercy v. Maketa*, 480 F.3d 1192 (10th Cir. 2007).

However, *Piercy* explicitly clarified that adverse actions include any employer conduct

causing a "significant change in employment status," such as constructive discharge. Id.

Unlike minor inconveniences discussed in *Piercy*, Plaintiff's Complaint explicitly alleges

a retaliatory IA investigation that directly culminated in constructive discharge—an

undeniable materially adverse employment action under controlling Tenth Circuit

precedent. See *Green v. Brennan*, 578 U.S. 547 (2016); *Strickland v. UPS, Inc.*, 555

F.3d 1224 (10th Cir. 2009).

Moreover, Defendants' argument disregards both the close temporal proximity

and the explicitly retaliatory context alleged by Plaintiff. The IA investigation began

almost immediately after Plaintiff reported protected complaints of discrimination and

harassment, and escalated significantly in severity and intensity over the subsequent

110 days, culminating directly in Plaintiff's constructive discharge. This progressive

intensification of scrutiny and hostility strongly supports a retaliatory motive and

underscores the causal connection between Plaintiff's protected activity and his forced

resignation.The Tenth Circuit consistently recognizes that close temporal proximity between protected activity and retaliatory conduct strongly supports causation at the pleading stage. See *Hansen*, 844 F.3d 914 (finding close timing between complaint and retaliation sufficient to infer causation).

Thus, Plaintiff has plausibly alleged all necessary elements of retaliation under Title VII and CADA. He engaged in protected activity, suffered materially adverse actions explicitly connected to that protected activity, and clearly established a plausible causal link based on immediate retaliatory conduct by Defendants.

### D.  Constructive Discharge – Intolerable Conditions Forcing Resignation

Plaintiff plausibly alleges constructive discharge due to intolerable discriminatory and retaliatory working conditions. Constructive discharge occurs when an employer's unlawful conduct makes conditions "so intolerable that a reasonable person in the employee's position would feel compelled to resign." *Penn. State Police v. Suders*, 542 U.S. 129 (2004). Plaintiff alleges severe harassment based on national origin and gender—including repeated historically charged slurs ("Nazi," "sour kraut"), explicit anti-German statements, and physical assault by a colleague during training. (Complaint, Doc. No. 10-1, p. 2.) He further alleges management's failure to protect him, coupled with a retaliatory Internal Affairs investigation designed to intimidate him into resignation. Collectively, these allegations objectively support constructive discharge. *Strickland v. UPS, Inc.*, 555 F.3d 1224 (10th Cir. 2009); *Green v. Brennan*, 578 U.S. 547 (2016).

Defendants incorrectly assert Plaintiff's resignation was voluntary, misapplying the legal standard which focuses solely on objectively intolerable conditions, not the

employer's subjective intent. Defendants' reliance on *Piercy v. Maketa* and *Morris v. City of Colo. Springs* is misplaced, as Plaintiff's allegations of severe harassment, physical assault constituting criminal harassment under Colorado law (Colo. Rev. Stat. §§ 18-3-204, 18-9-111), retaliatory scrutiny, and a baseless Internal Affairs investigation far exceed the minor inconveniences discussed in those cases. At the pleading stage, Plaintiff is not required to meet a "magic number" of incidents or produce exhaustive evidence, but rather must only provide sufficient facts to state a plausible claim—precisely what he has done here. Notably, Defendants already possess a detailed enumeration of these allegations, which Plaintiff furnished directly to them on December 22, 2021, during the retaliatory Internal Affairs investigation—documentation Defendants themselves later selectively provided to the EEOC.

Defendants should be estopped from asserting timeliness defenses due to their deliberate withholding of essential records despite Plaintiff's diligent EEOC/CCRD filings. Equitable tolling and estoppel apply precisely when a defendant's misconduct impedes timely filing. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982); *Martinez v. Orr*, 738 F.2d 1107 (10th Cir. 1984). Additionally, Plaintiff properly invokes the continuing violation doctrine due to Defendants' repeated denial of critical records and ongoing retaliation extending into December 2023. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022).

Thus, Plaintiff's constructive discharge allegations clearly meet the pleading standards. At minimum, the question of objective intolerability presents factual issues inappropriate for dismissal at this stage.

IV.    **FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM (§1983)**

**AND MONELL LIABILITY CLAIM (§1983)**

### A.  Plaintiff Had a Protected Property Interest and Was Deprived Without Adequate Process

Plaintiff has plausibly alleged that he was deprived of a constitutionally protected property interest in his employment without adequate process. Under clearly established law, public employees possess a protected property interest if statutes, regulations, or employer policies create a legitimate expectation of continued employment. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *Hulen v. Yates*, 322 F.3d 1229 (10th Cir. 2003). As a Weld County Sheriff's Office ("WCSO") deputy, Plaintiff was subject to explicit county and departmental policies incorporating Weld County Code provisions, establishing termination could occur only for cause and with procedural safeguards. These provisions created a legitimate expectation of continued employment—a constitutionally protected property interest. See *Loudermill*, 470 U.S. 532; *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123 (10th Cir. 2001).

Despite these protections, Defendants effectively terminated Plaintiff via constructive discharge in April 2022 without affording requisite notice or a fair hearing. Constructive discharge constitutes deprivation equivalent to termination. See *Green v. Brennan*, 578 U.S. 547 (2016); *Strickland v. UPS, Inc.*, 555 F.3d 1224 (10th Cir. 2009). The Complaint details how the internal affairs investigation leading to Plaintiff's resignation was biased and retaliatory—a sham designed to justify removal rather than provide fair process. Such biased investigatory procedures fundamentally fail due

process standards. See *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998); *McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205 (10th Cir. 2000).

No unbiased pre-termination hearing or meaningful post-deprivation remedy was provided. Defendants' internal appeal process did not rectify the fundamental unfairness but ratified it by forcing Plaintiff to resign under duress. See *Green*, 578 U.S. 547. Procedural due process mandates public employees be given notice of charges, an explanation of evidence, and an opportunity to respond meaningfully before deprivation of employment. See *Loudermill*, 470 U.S. 532; *Mathews v. Eldridge*, 424 U.S. 319 (1976). Indeed, the Supreme Court explicitly emphasizes that "the opportunity for a hearing before he is deprived of any significant property interest" is essential. *Boddie v. Connecticut*, 401 U.S. 371 (1971). Accepting these allegations as true at this stage—as required under Fed. R. Civ. P. 12(b)(6)—Plaintiff clearly states a viable procedural due process claim for loss of employment without constitutionally adequate procedures.

### B. Plaintiff's Procedural Due Process and Monell Claims are Timely Under Applicable Tolling Doctrines

Defendants assert a statute-of-limitations defense; however, Plaintiff explicitly invokes equitable tolling doctrines to overcome this. The applicable limitations period under §1983 is two years, borrowing Colorado's period for personal injury actions. See Colo. Rev. Stat. § 13-80-102(1)(g); *Wallace v. Kato*, 549 U.S. 384 (2007). Equitable tolling is appropriate when a plaintiff, despite diligence, is actively misled or prevented from timely filing due to the defendants' misconduct. See *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094 (Colo. 1996); *Montoya v. Chao*, 296 F.3d 952 (10th Cir. 2002).

Plaintiff explicitly alleges Defendants engaged in fraudulent concealment by withholding critical investigative records necessary for Plaintiff to substantiate his claims. Fraudulent concealment tolls the statute of limitations until the plaintiff discovers, or reasonably should have discovered, the concealed facts. See *First Interstate Bank of Denver, N.A. v. Piper Aircraft Corp.*, 744 P.2d 1197 (Colo. 1987). Defendants withheld essential investigatory details through at least December 8, 2023, well within two years of Plaintiff filing suit.

Moreover, Defendants' actions justify equitable estoppel, which prevents defendants from asserting a limitations defense when their wrongful conduct induces the plaintiff to delay filing. See *Shell W. E&P, Inc. v. Dolores Cty. Bd. of Cty. Comm'rs*, 948 P.2d 1002 (Colo. 1997); *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231 (1959). Defendants' assurances that internal processes would adequately address Plaintiff's concerns induced him to rely on these procedures rather than immediately filing suit, thus estopping Defendants from asserting a statute-of-limitations defense now.

Finally, Plaintiff's claims are timely under the continuing violation doctrine. When defendants engage in ongoing violations—such as repeated concealment and obstruction—the statute of limitations runs from the date of the last incident in the continuing violation pattern. See *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Herrera v. City of Espanola*, 32 F.4th 980 (10th Cir. 2022). Defendants' continued concealment of records through at least December 8, 2023, is part of a single continuing unlawful practice, rendering the entire claim timely.

Plaintiff's Monell claim is equally timely under these equitable tolling doctrines. Municipal liability attaches under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978),

when constitutional violations stem from official policies or actions of final policymakers. Sheriff Reams, as Weld County Sheriff, unquestionably served as the final policymaker regarding personnel and disciplinary decisions within the Sheriff's Office. See *Whitson v. Board of County Commissioners of Sedgwick County*, 106 F.4th 1063 (10th Cir. 2024) (recognizing a Colorado sheriff as final policymaker on employment-related decisions). Plaintiff explicitly alleges that Sheriff Reams authorized the biased internal affairs investigation and Plaintiff's constructive discharge, creating an official policy or custom of deliberate indifference to constitutional rights. Such actions constitute municipal policy sufficient for liability under § 1983. See *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Monell*, 436 U.S. 658. Because the underlying due process violation is timely due to tolling doctrines, the derivative Monell claim also remains timely.

Thus, Plaintiff's procedural due process and related Monell claims are timely and plausibly alleged.

### C. Equitable Estoppel: "No Man Shall Benefit from His Own Wrong"

In addition to the foregoing doctrines, the longstanding equitable maxim that "no man shall benefit from his own wrong" applies. This fundamental principle, articulated by the U.S. Supreme Court in *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231 (1959), prevents defendants who engage in misconduct from invoking statutes-of-limitations defenses. The Tenth Circuit explicitly recognizes estoppel where defendants' affirmative misconduct prevents timely filing. See *Martinez v. Orr*, 738 F.2d 1107 (10th Cir. 1984); *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094 (Colo. 1996).

Here, Defendants deliberately withheld essential investigative records and EEOC documentation, despite Plaintiff's repeated CORA requests, attorney inquiries, and EEOC demands. To date, Defendants have never directly provided Plaintiff with any requested records, most recently denying Plaintiff's CORA request on December 8, 2023. Plaintiff has received only heavily redacted, selectively curated documents indirectly through the EEOC, first disclosed on October 19, 2023—well within two years of filing suit. Defendants' ongoing intentional concealment prevented timely prosecution of Plaintiff's claims; therefore, Defendants should be estopped from asserting any timeliness defense arising from their wrongful conduct.

## V.    BREACH OF IMPLIED CONTRACT CLAIM

### A.  Plaintiff's Implied Contract Claim Is Not Subject to CGIA Immunity

Defendants argue Plaintiff's breach of implied contract claim is barred under the Colorado Governmental Immunity Act ("CGIA") due to a purported lack of notice and because the claim could lie in tort. Defendants rely exclusively on *Grand Junction Peace Officers' Ass'n v. City of Grand Junction*, 558 P.3d 1021 (Colo. App. 2024), to assert CGIA coverage. However, this reliance is misplaced. The *Grand Junction* case specifically involved negligence-based tort claims arising from mismanagement of a retiree health benefits program. Id. at 1026. Plaintiff's claim, by contrast, is explicitly contractual, grounded entirely on obligations arising from Defendants' employment policies, procedures, and personnel rules, not tort-based duties. Colorado courts have clearly established that claims explicitly based on employment manuals and policies constitute contractual claims, explicitly outside CGIA's tort-based immunity. *See City of Colo. Springs v. Conners*, 993 P.2d 1167 (Colo. 2000) ("Public entities are not immune

from actions for damages arising in contract[.]"); *Berg v. State Bd. of Agric.*, 919 P.2d

254 (Colo. 1996) (holding contract-based claims are not subject to CGIA immunity).

     Plaintiff's claim explicitly alleges that Defendants breached explicit contractual

commitments set forth in the Weld County Sheriff's Office ("WCSO") Policy Manual and

Weld County Code provisions governing employee discipline and termination

procedures. The alleged injury (employment termination without procedural fairness)

explicitly arises from the breach of these enforceable contractual promises—not from

tortious conduct or negligence. As such, Plaintiff's claim explicitly cannot "lie in tort" and

is thus explicitly outside CGIA's jurisdiction. *Robinson v. Colo. State Lottery Div.*, 179

P.3d 998 (Colo. 2008) (distinguishing contractual claims from tort claims under CGIA).

### B. Even if CGIA Applied, Plaintiff Substantially Complied with Notice Requirements and Defendants Had Actual Notice.

     Even assuming arguendo CGIA applicability, Plaintiff explicitly satisfied the notice

requirement through substantial compliance. Plaintiff filed a timely internal grievance on

April 18, 2022—clearly within the CGIA's 182-day notice period following his

constructive discharge on April 8, 2022. This grievance clearly detailed Plaintiff's

identity, involved parties, and provided specific factual allegations sufficient for

Defendants to investigate. Colorado courts recognize substantial compliance under

CGIA when a public entity receives sufficient actual notice to investigate and remedy

claims. *See Finnie v. Jefferson Cnty. Sch. Dist. R-1*, 79 P.3d 1253 (Colo. 2003);

*Gallagher v. Bd. of Trustees for Univ. of N. Colo.*, 18 P.3d 837 (Colo. App. 2002).

     Moreover, Defendants had actual notice of Plaintiff's claims, as demonstrated by

their detailed internal investigations and responses to Plaintiff's EEOC charges (filed on

February 1, 2023, and amended July 28, 2023). Thus, Defendants suffered no prejudice

due to any alleged lack of formal notice, satisfying both the substantial compliance and

actual notice standards under CGIA.

### C. Defendants' Procedural Misconduct Explicitly Constitutes Waiver and Estoppel

Defendants only raised CGIA immunity after substantively addressing Plaintiff's

claims before the EEOC and other proceedings, without initial CGIA objections. Such

procedural maneuvering constitutes waiver or estoppel under established Colorado law,

explicitly barring Defendants from invoking CGIA immunity at this stage. *See City of

Lakewood v. Brace*, 919 P.2d 231 (Colo. 1996) ("Procedural maneuvering to gain unfair

advantage constitutes waiver or bad faith[.]").

### D. Plaintiff's Complaint Explicitly Alleges an Enforceable Implied Employment Contract Under Colorado Law

Defendants argue Plaintiff's implied contract claim must fail because of a

disclaimer within the WCSO Custody Manual (§ 102.2.1) that purportedly disclaims

contract formation. However, under Colorado law, employment manual disclaimers are

only effective if explicitly "clear and conspicuous." *Cummings v. Arapahoe Cnty.

Sheriff's Dep't*, 440 P.3d 1179 (Colo. App. 2018).

Here, the disclaimer is neither clear nor conspicuous. The WCSO Custody

Manual is an extensive 717-page document containing numerous provisions explicitly

stating mandatory adherence: "All members are to conform to the provisions of this

manual." Throughout its exhaustive detail, mandatory language ("shall," "must")

reinforces procedural expectations for disciplinary actions. Such pervasive mandatory

directives explicitly contradict any general disclaimer. Courts hold that disclaimers

buried within extensive, mandatory manuals do not override explicit contractual

expectations created through consistent employer enforcement and representations.

*See Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987) (employer's

conduct enforcing manual policies creates implied contractual obligations despite

disclaimers); *Fair v. Red Lion Inn*, 920 P.2d 820 (Colo. App. 1995) (explicit mandatory

language and consistent enforcement negate effect of disclaimer).

### E. Defendants' Selective Enforcement Creates Actionable Implied Contractual Rights and Equal Protection Violations.

Defendants further argue Plaintiff has not adequately identified similarly situated

employees treated differently under the same standards. However, the WCSO manual

explicitly mandates compliance for "All members," establishing uniform disciplinary

standards applicable to all deputies. Defendants' selective enforcement of these policies

against Plaintiff—but not against similarly situated employees (such as Deputy Hein,

who committed objectively comparable misconduct)—demonstrates arbitrary and

discriminatory treatment explicitly prohibited under equal protection and due process

principles. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011) (selective

enforcement without rational basis violates equal protection); *Tonkovich v. Kan. Bd. of

Regents*, 159 F.3d 504 (10th Cir. 1998) (biased disciplinary process violates procedural

due process).

Thus, either the manual is enforceable—creating explicit implied contractual

rights Defendants breached—or it is non-binding, rendering all disciplinary actions taken

under it inherently arbitrary, discriminatory, and unjustifiable. This contradiction

constitutes a binding judicial admission explicitly precluding Defendants from claiming

no implied contract existed while simultaneously enforcing its provisions.

### F.  The Board of County Commissioners Is the Explicitly Proper Defendant

Finally, Defendants' claim that the Weld County Board of County Commissioners

("BOCC") lacks authority over Sheriff's Office employment matters explicitly contradicts

Colorado precedent. The BOCC explicitly holds comprehensive authority under the

Weld County Home Rule Charter and personnel codes over employment and

disciplinary actions involving Sheriff's Office deputies. *See Bd. of Cnty. Comm'rs of*

*Weld v. Andrews*, 687 P.2d 457 (Colo. App. 1984) (affirming BOCC authority over

Sheriff's Office employment decisions); *League of Women Voters of Greeley v. Bd. of*

*Cnty. Comm'rs of Weld Cnty.*, 2025 CO 8, ¶ 23 (confirming BOCC's personnel

oversight). Defendants previously affirmed the authority of the Weld County Board of

County Commissioners to administer Sheriff's Office personnel policies in multiple

forums, including official statements on the current Weld County Sheriff's Office website:

"All personnel, except the undersheriff, are administered in accordance with the

personnel procedures adopted by the Weld County Board of County Commissioners

pursuant to Home Rule Charter requirements." Defendants similarly affirmed this explicit

authority before administrative bodies (EEOC) and in prior judicial proceedings, thus

invoking the doctrine of judicial estoppel to bar their contradictory present claim.

*Johnson v. Lindon City Corp.*, 405 F.3d 1065 (10th Cir. 2005).

### VI.    ATTORNEY FEES REQUEST IS IMPROPER

Defendants' request for attorney fees is improper and should be denied. Under

federal law, attorney fees to prevailing defendants in employment discrimination and

civil rights cases may only be awarded where claims are found to be "frivolous, unreasonable, or without foundation," or brought in "bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978); *Hughes v. Rowe*, 449 U.S. 5 (1980); *Mitchell v. City of Moore*, 218 F.3d 1190 (10th Cir. 2000).

Plaintiff's claims are neither frivolous nor unreasonable; rather, they reflect well-grounded allegations of discrimination, retaliation, and procedural due process violations, each supported by specific and detailed factual assertions. Plaintiff's allegations raise legitimate disputes of fact and law concerning Defendants' adherence to internal policies and selective enforcement of disciplinary procedures. Such claims clearly do not meet the rigorous standard required to justify an award of attorney fees against a civil rights plaintiff. *See Christiansburg Garment*, 434 U.S. 412; *Mitchell*, 218 F.3d at 1190.

Moreover, equitable considerations weigh strongly against awarding attorney fees here. Plaintiff, proceeding pro se, faces substantial resource disparities compared to Defendants, who possess extensive litigation resources, insurance coverage for attorney fees, and an annual operating budget exceeding $550 million. Awarding attorney fees under these circumstances would severely discourage individuals, particularly pro se plaintiffs, from exercising their rights and seeking judicial redress for civil rights violations.

Accordingly, Plaintiff respectfully requests that this Court deny Defendants' request for attorney fees.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss [Doc. No. 31]. Plaintiff has plausibly alleged constitutional, statutory, and contractual violations supported by substantial factual assertions. Defendants' assertion of CGIA immunity is misplaced, as Plaintiff's claims arise from contractual, constitutional, and statutory duties—not tort. Even assuming CGIA applicability, Plaintiff substantially complied with notice requirements, and Defendants had actual notice demonstrated by internal investigations and EEOC responses. Additionally, Defendants are equitably estopped from asserting timeliness defenses due to deliberate concealment of investigative records and procedural misconduct. Plaintiff's claims are timely under equitable tolling, equitable estoppel, and the continuing violation doctrine, given Defendants' ongoing misconduct extending into December 2023. Defendants' contradictory positions, selective enforcement of rules, procedural irregularities, and ineffective disclaimer further undermine their motion. Finally, awarding attorney fees against a pro se plaintiff facing significant resource disparities relative to Defendants' extensive legal resources would be unjust and inequitable.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Deny Defendants' Motion to Dismiss [Doc. No. 31] in its entirety;

2. Alternatively, should the Court find any deficiencies, grant Plaintiff leave to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2);

3. Deny Defendants' improper request for attorney fees; and

4. Grant Plaintiff such further relief as the Court deems just and proper.

Dated at Greeley, Colorado, this 2nd day of July, 2025.

Respectfully submitted,

David Vogl

Digitally signed by
David Vogl
Date: 2025.07.02
16:52:14 -06'00'

s/ *David Vogl*

**David Vogl, Pro Se**
4355 24th Street Rd., Unit 901
Greeley, CO 80634
Telephone: (719) 460-9034
E-mail: david.vogl@gmail.com

## CERTIFICATE OF SERVICE

I, David Vogl, Plaintiff in the above-captioned matter and the person completing

service, hereby certify that on **July 02, 2025**,

I sent a copy of the **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION**

**TO DISMISS**, to the following parties in the way described below each party's name:


Party Name: Weld County Board of County Commissioners
How Served: Email: ttoomey@sgrllc.com, ckramer@sgrllc.com
Party Attorney's Name: Tiffany E. Toomey #54663, Courtney B. Kramer #40097
Address: 3900 E. Mexico Avenue, Suite 700, Denver, Colorado 80210
Telephone Number: (303) 320-0509
Email Address: ttoomey@sgrllc.com, ckramer@sgrllc.com

Party Name: Weld County Sheriff's Office
How Served: Email: ttoomey@sgrllc.com, ckramer@sgrllc.com
Party Attorney's Name: Tiffany E. Toomey #54663, Courtney B. Kramer #40097
Address: 3900 E. Mexico Avenue, Suite 700, Denver, Colorado 80210
Telephone Number: (303) 320-0509
Email Address: ttoomey@sgrllc.com, ckramer@sgrllc.com


*David Vogl*
(Signature of person completing service)
David Vogl,
4355 24th Street Rd., Unit 901
Greeley, CO 80634
Telephone: (719) 460-9034
E-mail: david.vogl@gmail.com